**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | Criminal No. 16-274 |
| | ) | Civil Action No. 18-1386 |
| SANTANA WYGANT, | ) | Judge Nora Barry Fischer |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

**I.     Introduction**

This matter is before the Court on a Motion under 28 U.S.C. § 2255 to Vacate, Set Aside or Correct Sentence ("§ 2255 Motion") filed by *pro se* Defendant Santana Wygant ("Defendant") (Docket No. 78), which is opposed by the Government. (Docket No. 81). Defendant seeks to vacate his sentence of 36 months' imprisonment and five years' supervised release imposed by this Court for his violations of supervised release conditions. For the following reasons, Defendant's § 2255 Motion will be denied.

**II.     Background and Procedural History**

On September 15, 2009, Defendant was sentenced by the United States District Court for the Northern District of West Virginia to 108 months' imprisonment and six years' supervised release following his guilty plea to aiding and abetting the distribution of cocaine base within one thousand feet of a protected location, in violation of 18 U.S.C. § 2 and 21 U.S.C. §§ 841(a)(1), (b)(1)(C) and 860. (Docket 1-2). On January 12, 2012, Defendant's sentence was reduced to 87 months' imprisonment and six years' supervised release. (Docket 1-3). After Defendant's release

1

from custody, his term of supervision began on April 15, 2015.  Jurisdiction of Defendant's case was transferred to this Court on October 12, 2016.  (Docket No. 1-4 at 10).

Thereafter, the Probation Office and the Government alleged that Defendant committed multiple Grade A, B and C violations of the conditions of his supervised release.  (Docket Nos. 4, 7, 22, 32, 40).  Defendant admitted that he committed the Grade C violations, but he contested the Grade A and B violations, which were the subject of hearings held on June 2, 2017, August 9, 2017 and October 10, 2017.  (Docket Nos. 27, 41, 53).  The Government alleged, *inter alia*, that Defendant assaulted the victim, L.D., who was the mother of one of his children.

At the evidentiary hearing held on August 9, 2017, L.D. testified that Defendant came to her house to bring dinner to their child on December 5, 2016, at around 5:00 p.m.  (Docket No. 55 at 6-7).  While in L.D.'s home, Defendant assaulted her and had sexual intercourse with her against her will.  (Id. at 7).

Defendant disputed the allegations of sexual assault on an alibi theory.  (Docket No. 55 at 15, 16).  Defendant testified and denied that he had sexually assaulted L.D. or that he was even at her home on December 5, 2016.  (Id. at 15).  According to Defendant, at 8:00 p.m. that evening, he was home with his fiancée watching television, which his fiancée corroborated.  (Id. at 13, 15).  Defendant could not, however, specify when he arrived home prior to that time, nor could he recall where he was between 5:00 and 8:00 p.m. that evening.  (Id. at 14-15).  Yet, Defendant introduced cell tower records which he claimed showed his cell phone was not in the vicinity of L.D.'s house between 5:00 and 8:00 p.m. on December 5, 2016.  (Id. at 19-23).

This Court found that L.D. was a credible witness, but Defendant was not.  (Docket No. 55 at 25, 27, 28).  As to the cell tower evidence, the Court determined that those records were not dispositive of the events that took place on the evening of December 5, 2016.  (Id. at 28).  In that

regard, the Court noted that other than Defendant making a cursory statement that "[y]ou never go anywhere without your phone," he presented no evidence regarding where his phone was located on December 5, 2016. (Id.). Ultimately, the Court concluded that Defendant sexually assaulted L.D. and had therefore committed multiple Grade A, B and C violations of his supervised release. (Id. at 29; Docket No. 58). On October 18, 2017, the Court revoked Defendant's supervised release and sentenced him to 36 months' imprisonment and five years' supervised release. (Docket No. 59).

Defendant subsequently filed a direct appeal, arguing that in reviewing his alibi defense, this Court made a clearly erroneous finding of fact when it found that there was no evidence that he had his cell phone with him on December 5, 2016. On April 11, 2018, the United States Court of Appeals for the Third Circuit concluded that there was no clear error and affirmed this Court's judgment. (Docket No. 74-1).

On October 17, 2018, Defendant filed the § 2255 Motion arguing that his court appointed counsel, Assistant Federal Public Defender Thomas Livingston, was ineffective in representing him at the revocation proceedings because he failed to investigate L.D.'s story to impeach her credibility, he failed to subpoena L.D.'s cell phone in order to investigate the content of deleted text messages and he failed to interview and subpoena potential alibi witnesses. (Docket No. 78 at 1).

On October 18, 2018, the Court entered its standard order pursuant to United States v. Miller, 197 F.3d 644 (3d Cir. 1999), advising Defendant that all federal constitutional claims had to be included in a single habeas corpus petition and of his right to: (1) withdraw the pending motion and file one new, all-inclusive § 2255 motion setting forth every ground which may entitle him to relief from his conviction and sentence, provided that such motion is timely; (2) amend the

§ 2255 motion presently on file to include any additional claims or materials he wished to raise; or (3) choose to proceed with the motion as filed. (Docket No. 79 at 1-2). The order specified that Defendant was required to notify the Court in writing of his choice within 30 days of the date of the order. (Id. at 2). If Defendant did not respond within that time, the Court would proceed to decide the § 2255 Motion as filed. (Id.).

Defendant did not respond to the Court's Miller notice; thus, the Government was ordered to respond to Defendant's § 2255 motion. On December 18, 2018, the Government filed a response arguing that Defendant is not entitled to § 2255 relief on any of his claims. (Docket No. 81). Defendant filed a reply to the Government's response on January 3, 2019. (Docket No. 82). The matter is now ripe for review.

### III. Legal Standard

A prisoner in federal custody may move to vacate his sentence under 28 U.S.C. § 2255 if such "sentence was imposed in violation of the Constitution or laws of the United States." 28 U.S.C. § 2255(a). As a collateral challenge, a motion under § 2255 is "reviewed much less favorably than a direct appeal of the sentence." United States v. Travillion, 759 F.3d 281, 288 (3d Cir. 2014). Section 2255 relief "is available only when 'the claimed error of law was a fundamental defect which inherently results in a complete miscarriage of justice, and . . . present[s] exceptional circumstances where the need for the remedy afforded by the writ . . . is apparent.'" Id. (quoting Davis v. United States, 417 U.S. 333, 346 (1974)).

A district court must order an evidentiary hearing in a federal habeas case if a defendant's § 2255 allegations raise an issue of material fact. United States v. Biberfeld, 957 F.2d 98, 102 (3d Cir. 1992). But, if there is "no legally cognizable claim or the factual matters raised by the motion

4

may be susceptible of resolution through the district judge's review of the motion and records in the case," the motion may be decided without a hearing. United States v. Costanzo, 625 F.2d 465, 470 (3d Cir. 1980); see also United States v. Tolliver, 800 F.3d 138, 140-41 (3d Cir. 2015). If a hearing is not held, the district judge must accept the defendant's allegations as true "unless they are clearly frivolous on the basis of the existing record." Gov't of Virgin Islands v. Bradshaw, 726 F.2d 115, 117 (3d Cir. 1984). Similarly, "vague and conclusory allegations contained in a § 2255 petition may be disposed of without further investigation by the District Court." United States v. Thomas, 221 F.3d 430, 437 (3d Cir. 2000). The Court finds no need for an evidentiary hearing in this case because the record conclusively establishes that Defendant is not entitled to relief.

## IV. Discussion

Defendant contends that Attorney Livingston was ineffective because: (1) he failed to investigate L.D.'s story to impeach her credibility; (2) he failed to subpoena L.D.'s cell phone in order to investigate the content of deleted text messages; and (3) he failed to investigate and subpoena potential alibi witnesses. (Docket No. 78 at 1). In order to prevail on his claim that Attorney Livingston rendered constitutionally ineffective assistance, Defendant must demonstrate that: (1) counsel's performance was deficient; and, (2) the deficient performance prejudiced the defense. Strickland v. Washington, 466 U.S. 668, 687 (1984). Defendant must establish both prongs of the inquiry, for "[f]ailure to make the required showing of either deficient performance or sufficient prejudice defeats the ineffectiveness claim." Id. at 700.

The deficient performance prong "requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Strickland, 466 U.S. at 687. This requires proof that counsel's performance fell

5

below an objective standard of reasonableness under the prevailing professional norms. Id. at 688. The assessment begins with a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance" and the court's scrutiny of counsel's performance is to be highly deferential. Id. at 689. The assessment of counsel's performance must be made without using the benefit of hindsight to second-guess tactical decisions made by an attorney unless they are unreasonable. Id. at 689-90.

If deficient performance is established, the second prong of the Strickland analysis requires a showing that counsel's deficient performance prejudiced the defense. "This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland, 466 U.S. at 687. To do so, a petitioner must demonstrate that but for counsel's unprofessional errors, there is a reasonable probability that the result of the proceeding would have been different. Id. at 694. The assessment cannot be based upon generalities but instead must be based upon a demonstration of how the "specific errors of counsel undermined the reliability of the [finding] of guilt." Flamer v. State of Delaware, 68 F.3d 710, 729 (3d Cir. 1995) (quoting United States v. Cronic, 466 U.S. 648, 659 n.26 (1984)).

Defendant is not entitled to § 2255 relief on any of his claims because he has not shown that Attorney Livingston's performance was deficient under Strickland. As an initial matter, all of Defendant's claims of deficient performance relate to his after-the-fact dissatisfaction with tactical decisions made by Attorney Livingston relative to the evidentiary hearings on his supervised release violations. This Court will not second-guess such decisions, which Attorney Livingston no doubt made after exercising his professional judgment about which strategy would produce the greatest likelihood for success in the proceedings. See Strickland, 466 U.S. at 689 ("[A] court must indulge a strong presumption that counsel's conduct [fell] within the wide range of

reasonable professional assistance[.]"). Nonetheless, for reasons explained below, this Court does not find that Attorney Livingston's performance was deficient in any area asserted by Defendant.

Defendant first claims that Attorney Livingston's performance was deficient because he failed to investigate L.D. to impeach her credibility concerning her testimony that Defendant assaulted and raped her on December 5, 2016, between 5:00 and 8:00 p.m. According to Defendant, investigation would have revealed that L.D. did not attend school on Monday, their daughter did not attend daycare on Monday, and L.D. had a prior arrest expunged. (Docket No. 78 at 1). Defendant repeats those assertions in his own "Affidavit," which is attached to his § 2255 Motion. (Id. at 3).

The Supreme Court has held that "counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." Strickland, 466 U.S. at 691. In assessing counsel's investigation decisions, what the defendant told counsel is crucial. See id. ("The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions. Counsel's actions are usually based, quite properly, . . . on information supplied by the defendant."). Indeed, counsel "cannot be faulted for not looking for some[thing] he does not know may exist." United States v. Diaz, Crim. No. 09-531-1, 2013 WL 4763803, at *3 (E.D. Pa. Sept. 5, 2013).

Defendant now claims that L.D.'s credibility could have been impeached with information concerning when she attended school and when their daughter attended daycare, but he does not

allege that he supplied this information to Attorney Livingston.[1] Absent such information, Attorney Livingston could not possibly have investigated those matters despite Defendant's current claim to the contrary. As to Defendant's contention that Attorney Livingston could have impeached L.D.'s credibility with an alleged expunged arrest for an unspecified crime, arrest information is not admissible for impeachment purposes. See Fed. R. Evid. 609 (a prior criminal conviction which satisfies the requirements of the rule is admissible to impeach a witness); United States v. Camacho, Crim. No. 10-170, 2010 WL 5069866, at *2 (E.D. Pa Dec. 6, 2010) (an arrest is not admissible for impeachment purposes under Rule 609).

Defendant next claims that Attorney Livingston's performance was deficient because he did not subpoena L.D.'s cell phone in order to investigate the content of deleted text messages. (Docket Nos. 78 at 2; 82 at 1). As one court observed, among major cellular carriers, only Verizon retains text message content and it only does so for three to five days. Federico v. Lincoln Military Hous., LLC, No. 2:12-cv-80, 2014 WL 7447937, at *8 (E.D. Va. Dec. 31, 2014) (citing Retention Periods of Major Cellular Service Providers, U.S. Dep't of Justice, Computer Crime and Intellectual Property Section (Aug. 2010)). L.D.'s testimony established that any deleted text messages would have been from the period after November 26, 2016 to December 7, 2016.[2] (Docket No. 46 at 25, 32-33). Attorney Livingston was not appointed to represent Defendant until February 23, 2017, (Docket No. 14), thus the content of any deleted text messages for the period at issue would not have been available by the time his representation commenced. As such,

---

[1] Moreover, Defendant broadly asserts in his "Affidavit" that he knew about the daily schedules of L.D. and their daughter, but he has not submitted any evidence, such as school or daycare records, to substantiate his claim that neither attended school or daycare on Mondays in December 2016.

[2] L.D. testified at the evidentiary hearing concerning text messages between her and Defendant on November 25 and 26, 2016, after which time there was a gap in their communication until December 7, 2016. (Docket No. 46 at 22-25). L.D. explained that the gap occurred because there was little communication between the two and because she had deleted some of the text messages. (Id. at 32-33).

Attorney Livingston was not deficient for allegedly failing to subpoena records that did not exist.

Furthermore, if Defendant believed any text messages with L.D. which she supposedly deleted were exculpatory, those same text messages would have been available on Defendant's own cell phone and he could have provided them to Attorney Livingston, but he apparently did not do so. In that regard, Attorney Livingston asked Defendant at the evidentiary hearing: "[a]gain, we weren't able to get phone records that compelled the conclusion that there were deleted text messages, correct?" (Docket No. 46 at 108). Defendant responded, "[c]orrect." (Id.). This demonstrates that Attorney Livingston attempted to obtain records of deleted text messages between L.D. and Defendant, but no such records were available. Accordingly, Defendant's claim that Attorney Livingston was deficient for failing to subpoena L.D.'s cell phone to investigate the content of deleted text messages is not supported by the record.

Finally, contrary to Defendant's assertion, Attorney Livingston was not ineffective for failing to interview supposed alibi witnesses and subpoena them to testify at the evidentiary hearing. (Docket Nos. 78 at 2; 82 at 2). According to Defendant, counsel should have contacted "more than 10 people" "whose numbers [he] had in [his] phone" to establish that he was not at L.D.'s house between 5:00 and 8:00 p.m. on December 5, 2016. (Docket No. 82 at 2). Notably, Defendant has not identified any of the individuals he claims should have been interviewed and subpoenaed, let alone explained how their testimony would have established a credible alibi. See Thomas, 221 F.3d at 437-38 (vague and conclusory allegations in a § 2255 motion, such as alleged failure to interview and call unidentified witnesses, may be disposed of without further investigation by the district court); Zettlemoyer v. Fulcomer, 923 F.2d 284, 298 (3d Cir. 1991) (explaining that a defendant "cannot meet his burden to show that counsel made errors so serious that his representation fell below an objective standard of reasonableness based on vague and

9

conclusory allegations that some unspecified and speculative testimony might have established his defense").

For the reasons discussed, the Court finds that Attorney Livingston's performance was not deficient. Even if Defendant could demonstrate deficient performance, the Court concludes that he has shown no prejudice under Strickland – no reasonable probability that, had counsel not committed the errors Defendant now claims, the outcome of the case would have been different.[3] Because Defendant has failed to establish deficient performance by counsel and resulting prejudice, the Court finds that his claims of ineffective assistance of counsel lack merit.

V. **Conclusion**

For the reasons explained herein, Defendant's § 2255 Motion fails to raise any meritorious claim and will be denied, with prejudice. Moreover, the Court concludes that Defendant has failed to make a substantial showing of the denial of a constitutional right and is not entitled to a certificate of appealability. An appropriate order follows.

/s/ Nora Barry Fischer
Nora Barry Fischer
United States District Judge

Dated: April 23, 2019

cc/ecf: All counsel of record

      Santana Wygant
      (via U.S. mail)

---

[3] Although Defendant contested the Grade A and B violations, he admitted committing Grade C violations, (see Docket No. 27), for which he was subject to revocation and a potential statutory penalty of 36 months' imprisonment and up to a life term of supervised release. As stated, this Court sentenced Defendant to 36 months' imprisonment and five years' supervised release, which was within the authorized statutory range for any Grade of violation.